IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**YVONNE K. WORDEN,**

    **Plaintiff,**

                              **Civil Action 2:13-cv-739**
    v.                            **Judge Algenon L. Marbley**
                              **Magistrate Judge Elizabeth P. Deavers**


**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


**REPORT AND RECOMMENDATION**

Plaintiff, Yvonne Worden on behalf of Terry L. Worden, deceased, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income.[1]  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

---

[1]For purposes of clarity, the Court refers to the Decedent Terry L. Worden as "Plaintiff" in this Report and Recommendation.

## I. BACKGROUND

Plaintiff filed his applications for benefits on August 11, 2010, alleging that he has been disabled since October 21, 2006,[2] at age 48. (R. at 195-96, 197-200.) Plaintiff alleges disability as a result of trouble getting along with people, lower back problems, arthritis in his left hand, and high blood pressure. (R. at 219.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Henry B. Wansker ("ALJ") held a hearing on February 9, 2012, at which Plaintiff, represented by counsel, appeared and testified. (R. at 46-61.) Lynne M. Kaufman, a vocational expert ("VE"), also appeared and testified. (R. at 44-46, 62-66.) On March 6, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-23.) On May 31, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-5.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

**A.     Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that he completed the tenth grade, but that he had only been able to "somewhat" read and write. (R. at 47.) He reported that he was able to pass the written drivers' examination and that he had a driver's license. (*Id.*) He stated that he "probably could" could go grocery shopping and get items off of the list without assistance, but that he would not be able to correctly count change. (R. at 48.) Plaintiff

---

[2]Plaintiff later amended his onset date of disability to March 18, 2008, upon turning 50 years old. (R. at 13, 42.)

indicated that he had attempted to obtain employment since 2006. He believed that employers did not hire him because of his criminal record. (R. at 49.)

Plaintiff testified that he can no longer perform a job standing on his feet because knee pain makes it difficult to stand for prolonged periods of time. He estimated that he would need to sit down after standing for 10-15 minutes. He indicated that he also experienced pain in his lower back and hands. He stated that his knees "ache all the time," his hand would swell if he "touch[es] it the wrong way," and his back would "pop out" if he stretches too far. (R. at 53.) Plaintiff indicated that he did not have medical insurance and that he was denied a medical card (Medicaid) because of his wife's wages. He had been prescribed Naproxen for the pain, which he stated "curb[ed]" his pain, but did not "solve the problem." (R. at 54.) Plaintiff rated his pain on an average day at a level of 7-8 on a 0-10 scale. (R. at 54.) He stated that this pain impacted his ability to bend and walk and required him to "get up and stretch every now and then." (R. at 54.) He testified that he can only walk "a couple of rooms" before needing to rest and that he cannot climb stairs. (R. at 56.) Plaintiff indicated that the pain makes him irritable. He also stated that he took Flomax at night, which caused him to feel dizzy. (R. at 54-55.) He "ke[pt] a walker around," but no ambulatory aides were prescribed. (R. at 57.)

In terms of daily activities, Plaintiff indicated that he watched television and went from room to room to keep his legs moving. He testified that he could prepare a sandwich and start the dishes, but not finish them. He also picks up his belongings and uses the microwave.

**B.     Vocational Expert Testimony**

The VE testified to that Plaintiff's past relevant employment included a roofing laborer, at the unskilled, very heavy exertional level, and slitter operator, which he performed at the semi-skilled, medium exertional level. (R. at 45-46).

The ALJ asked a series of questions about a hypothetical individual with Plaintiff's age, educational background, and work experience and the following capabilities and limitations: capable of lifting and carrying ten pounds frequently and twenty pounds occasionally; capable of sitting for six hours in an eight-hour workday; can stand/walk for six hours in an eight-hour workday; unlimited ability to push and pull; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; cannot work around hazardous machinery or unprotected heights; able to perform simple, routine, repetitive tasks; is capable of work involving no more than occasional, superficial interaction with coworkers and supervisors and minimal interaction with the general public; cannot do work requiring strict time or production demands; and instructions as to work processes and procedures must be oral. (R. at 62-63.)

The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work. (R. at 63.) The VE further testified that this individual could perform other work at the light exertional level, such as a cleaner, with 500 jobs in the regionally economy, 7,500 jobs in the State of Ohio, and 200,000 jobs nationally; a packer, with 250 jobs regionally, 5,000 jobs in the State of Ohio, and 130,000 jobs nationally; and a sorter, with 200 jobs in the regional economy, 2,500 jobs in the State of Ohio, and 65,000 jobs nationally. (*Id.*)

4

Upon Plaintiff's counsel's cross-examination, the VE testified that the additional limitation of needing to a break every 15 minutes to stretch would be work preclusive.

### III. MEDICAL RECORDS[3]

The record contains treatment records from family physician, Thomas P. Forrestal, M.D., from December 2001 until October 2006. (R. at 373-435.) Dr. Forrestal treated Plaintiff for muscular pain to his left hand, an abscess to his right hand, pain in both elbows, tendonitis, depression, and hemorrhoids. (*Id.*) The last treatment note, dated October 2006, reflects that Plaintiff complained of lower back pain. He was prescribed Naprosyn and Vicodin. (R. at 373.)

Plaintiff began treating with chiropractor Andrew Stiegler, D.C., in July 2007. (R. at 438-44.) Plaintiff informed Dr. Stiegler that he was involved in a job injury in December 2003 and that he was originally diagnosed with a strain to his lower back. He reported pain with stiffness on both sides of his lower back, buttocks, and hips. (R. at 438.) Plaintiff rated his pain at a level of 10 on a 0-10 scale. (R. at 439.) Dr. Stiegler noted tenderness and trigger points along both sides of Plaintiff's spine, limited range of motion with pain, and positive straight-leg raise testing on both legs. (R. at 442.) X-ray's of Plaintiff's lumbopelvic spinal areas showed spondylothesis and facet imbrications at L5/S1. (R. at 433.) Dr. Stiegler recommended six weeks of strengthening therapy three times per week. (*Id.*)

---

[3] The ALJ determined that Plaintiff had a number of severe mental impairments, including an intermittent explosive disorder, an adjustment disorder with chronic anxiety, antisocial personality traits, a major depressive disorder, and a learning disorder not otherwise specified. (R. at 16.) On appeal, however, Plaintiff's arguments relate only to his exertional impairments. (*See* Pl.'s Statement of Errors 3, ECF No. 12) (noting the severe mental impairments and stating that "[t]he ALJ's conclusions about Mr. Worden's limitations as a result of his psychological impairments are not disputed, and accordingly, the discussion of relevant psychological facts will not be included herein.") Consequently, this Report and Recommendation, like Plaintiff's Statement of Errors and the Commissioner's Memorandum in Opposition, considers only evidence and determinations relating to Plaintiff's exertional impairments.

On August 2, 2007, Dr. Stiegler reported that range-of-motion testing reflected limited range of motion in the lumbar spine resulting in 14% whole-person impairment. (R. at 468-69.) The testing also reflected that Plaintiff had limited trunk rotation involving the nerve and a bilateral strength loss of 30%. (R. at 478.) Range-of-motion testing on October 1, 2007, reflected whole-person impairment of 13%. (R. at 470-71.)

On October 21, 2010, Mark Weaver, M.D., examined Plaintiff on behalf of the state agency. (R. at 547-55.) Plaintiff alleged disability due to knee problems and hemorrhoids. (R. at 547.) Plaintiff complained of pain, popping, cracking, and stiffness in his knees that he estimated limited his ability to stand and walk to fifty minutes at a time, created difficulty with any bending, stooping, or crouching, and limited him to lifting or carrying more than twenty pounds occasionally. (*Id.*) Upon examination, Dr. Weaver observed that Plaintiff ambulated with a stiffened gait. Plaintiff could only sit for ten minutes because of hemorrhoid pain. (R. at 548.) Musculoskeletal examination of the upper and lower extremities showed no swelling, discoloration or gross deformities. Dr. Weaver found no asymmetric muscle atrophy or spasm of the upper and lower extremities. Strength testing in manual muscle testing against resisted joint motions reflected "ratchety inconsistency with pain inhibition and giving way in the knees, but was normal in all other muscle groups of the extremities." (R. at 549.) Active and passive motions were restricted with pain inhibition in both knees, but were normal in all other major joints of the extremities. Plaintiff performed 50% of a normal squat and arose with assistance. (R. at 550.) Dr. Weaver opined that Plaintiff would probably be limited in sustained sitting, standing, walking, climbing, squatting, stooping, crouching, kneeling, crawling and performing repetitive lifting and carrying. (R. at 551.) Dr. Weaver further opined that Plaintiff "would

6

probably be capable of performing physical activities involving occasional light or moderate lifting and carrying, handling objects, speaking, hearing, and following directions." (R. at 551.)

On December 2, 2010, state-agency physician, Gerald Klyop, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 98-99.) Dr. Klyop opined that Plaintiff could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently; stand, walk, and/or sit for about six hours in a workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and could never climb ladders, ropes or scaffolds due to knee pain. (R. at 98-99.) Dr. Klyop also opined that Plaintiff needed "to alternate sitting and standing with normal breaks" because of knee pain and hemorrhoids. (R. at 98.) On May 17, 2011, state-agency physician, Myung Cho, M.D., reviewed the record upon reconsideration and essentially affirmed Dr. Klyop's assessment. (R. at 118.)

Plaintiff treated at Muskingum Valley Health Center for primary care from March 2010 until at least August 2011. (R. at 580-87, 604-32, 737-46.) The records reflect that Plaintiff was treated for hypertension, insomnia, hypercholesterolemia, arthritis, and allergic rhinitis. (*Id.*) Plaintiff complained of chest, knee, and ankle pain in February 2011. Dr. Schowengerdt, who examined Plaintiff, found crepitation with knee motion in both knees and tender joints, so he ordered MRIs of both knees. (R. at 582-83.) The MRI of the right knee on March 8, 2011, showed a tear in the posterior horn of the medial meniscus; and the MRI of the left knee revealed degeneration of the medial meniscus. (R. at 595.)

Plaintiff sought treatment from orthopaedic surgeon, Lowell Body, M.D., on March 29, 2011, due to his knee pain. Dr. Body found medial joint line tenderness and diagnosed Plaintiff with internal derangement of the knee. (R. at 651.) On March 29, 2011, Samuel Finck, D.O.,

7

another orthopaedic surgeon examined Plaintiff.  Plaintiff complained of pain and a feeling of instability for "possibly a year or two."  On examination, Dr. Finck found significant tenderness to palpation and mild effusion.  He recommended an arthroscopy with partial meniscectomy.  (R. at 652.)

## IV.  THE ADMINISTRATIVE DECISION

On March 6, 2012, the ALJ issued his decision.  (R. at 10-23.)  At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his amended alleged onset date of March 18, 2008.  (R. at 15.)  The ALJ found that Plaintiff had the severe impairments of an intermittent explosive disorder, an adjustment disorder with chronic anxiety, antisocial personality traits, a major depressive disorder, a learning disorder not otherwise specified, internal derangement of his right knee, meniscal degeneration of his left knee, and functional illiteracy.  (R. at  16.)  The ALJ also found

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff's hypertension and tobacco dependence were not severe impairments. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"). The ALJ found that Plaintiff retained the following exertional RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).
>
> Specifically, the claimant can lift and carry ten pounds frequently and twenty pounds occasionally. He can sit for six hours in an eight-hour workday and he can stand/walk for six hours in an eight-hour workday. His ability to push and pull is unlimited. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He cannot climb ladders, ropes, or scaffolds, and he cannot work around hazardous machinery or unprotected heights.

(R. at 17-18.) In reaching this determination, the ALJ assigned "great weight" to the opinions of Drs. Klyop and Cho, finding their assessments consistent with and well supported by the evidence of the record as a whole and other credible opinion evidence. (R. at 21.) The ALJ assigned "some weight" to the opinion of the consultative medical examiner, Dr. Weaver, noting he determined no function-by-function limitations, despite his program familiarity and status as an examining source. (*Id.*) The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they are inconsistent with the above residual functional capacity assessment. (R. at 20.)

Relying on the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the state and national economy that Plaintiff can perform. (R. at 22.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 23.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff advances two contentions of error in support of his assertion that the Court should reverse the Commissioner's decision.  First, Plaintiff contends that the ALJ erred in excluding a sit/stand option within Plaintiff's RFC.  Within this contention of error, Plaintiff points out that both of the non-examining physicians upon whom the ALJ relied opined that Plaintiff required a sit/stand option.  Plaintiff adds that examining physician Dr. Weaver likewise noted that Plaintiff could only sit for ten minutes.  For his second contention of error, Plaintiff submits that the ALJ erred in assessing his credibility.  Within this contention of error, Plaintiff submits that the ALJ erroneously relied upon his ability to sit through the hearing and incorrectly concluded that he needed only Naproxen to manage his knee pain.  Plaintiff posits that these errors, combined with the ALJ's failure to discuss or resolve inconsistencies in the record, requires the conclusion that the ALJ's RFC and nondisability findings are unsupported by substantial evidence.  The Undersigned addresses Plaintiff's contentions of error in turn.

**A.  RFC Assessment**

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v.*

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

The Undersigned finds that substantial evidence supports the ALJ's RFC assessment. In formulating the RFC, the ALJ considered all of Plaintiff's medical records as well as his testimony. He ultimately accorded "some weight" to Dr. Weaver's consultative examination, explaining that Dr. Weaver "determined no function-by-function limitations despite his familiarity and status as an examining source." (R. at 21.) The ALJ assigned "[g]reat weight" to the opinions of the two state-agency physicians, Drs. Klyop and Cho, noting their program familiarity and his finding that their opinions "are consistent with the greater weight of the medical evidence of record and . . . the other credible opinion evidence." (*Id.*) The Undersigned finds no error with the ALJ's consideration and weighing of the medical opinions and evidence.

Plaintiff does not attack the ALJ's reliance on the opinions of Drs. Cho and Klyop. Instead, he maintains that the ALJ erred in omitting the sit/stand option in his RFC that both Drs. Cho and Klyop included. Plaintiff's contention fails to find support in the record. Certainly, if

Drs. Cho and Klyop had included a sit/stand option, the ALJ's failure to incorporate or explain how the evidence did not support such a limitation would constitute reversible error.  But contrary to Plaintiff's assertion, Drs. Cho and Klyop did not opine that he required a sit/stand option.  Rather, they opined that Plaintiff could sit, stand, and walk for approximately six hours in an eight-hour workday and "is to alternate sitting and standing with normal breaks." (R. at 98, 117.)  The ALJ incorporated these limitations into Plaintiff's RFC and the hypothetical posed to the VE with the exception of the limitation that he be permitted to alternate sitting and standing with normal breaks.  The ALJ's failure to include this limitation or explain its exclusion, however, is insignificant because the ability to take normal breaks and the ability to vary sitting and standing during these breaks is contemplated.  *See* SSR 83-12 ("Persons who . . . need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work. . . . . Only in cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.").  Put simply, the discrepancy between the limitations set forth in the ALJ's RFC and Drs. Cho and Klyop's opinions is harmless.

Nor did the ALJ err in his assessment of Dr. Weaver's evaluation.  Significantly, as the ALJ observed, Dr. Weaver did not set forth any specific limitations.  Further, the limitations the ALJ incorporated into Plaintiff's RFC are consistent with Dr. Weaver's opinion that Plaintiff "would probably" be limited in regards to some exertional activities and capable of others.  (*See* R. at 551.)  Dr. Weaver's observation that Plaintiff's hemmorhoid problem affected his ability to sit that day did not persuade Dr. Weaver to include such a limitation within his clinical summary, and such a limitation is not elsewhere supported in the record.  Thus, the ALJ did not err in not

including such a limitation in Plaintiff's RFC. Similarly, given the ALJ's finding that Plaintiff was not fully credible with regards to his allegations of pain, he did not err in failing to include limitation based upon Plaintiff's subjective self report to Dr. Weaver that his knee pain limited his ability to stand to approximately fifty minutes.

**B.     Credibility Assessment**

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite

this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

In the instant case, after consideration of the medical record and Plaintiff's testimony, the ALJ analyzed his credibility as follows:

> The claimant's subjective complaints are not supported by nor are they consistent with the objective medical evidence. Although the medial evidence documents that existence of an impairment that could reasonably be expected to produce a certain degree of pain or other symptoms, the pivotal question is not

15

> whether such symptoms exist. It is instead, whether these symptoms occur with such frequency, duration, and/or severity as to reduce the claimant's residual functional capacity to what has been set forth above in the findings, or are of such severity as to preclude any and all work activity on a 'regular and continuing basis (SSR 96-8p).
>
> **The claimant's allegations are not fully credible:**
>
> \* \* \*
>
> ▸ He requires only Naproxen (an NSAID) for his pain.
>
> ▸ He was able to sit throughout the entire hearing, although he was advised by his counsel and by the Administrative Law Judge that it was OK for him to alternate his posture at will.
>
> ▸ He was cognitively engaged and alert throughout the hearing despite his allegations of disabling, intractable pain.
>
> After careful consideration of all of the evidence, including the testimony at the hearing, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 19–20; *see also* R. at 17 ("The claimant replied that he did not want to disrupt the hearing so he remained seated, but the fact remains that he was able to do so.").)

The Undersigned declines to disturb the ALJ's credibility determination as substantial evidence supports his determination that Plaintiff exaggerated his pain. Contrary to Plaintiff's assertion, the ALJ did not err in relying upon his observations that Plaintiff sat engaged and alert during the entire forty-six-minute hearing to discredit his allegations that he needed to move his knee after fifteen minutes of sitting. *See Infantado*, 263 F. App'x at 475 (ALJ can assess credibility based, in part, on witnesses demeanor). Nor did the ALJ err in concluding that Plaintiff's recent prescription of Naproxen, which treats only mild-to-moderate inflammation, and his testimony that it "curbs" his pain, (R. at 54), undermine his allegations of disabling pain.

16

*See Dickie v. Astrue*, No. 3:11-cv-0585, 2012 WL 3285624, at *3 n.3 (M.D. Tenn. July 20, 2012) ("Naproxen is a NSAID prescribed for arthritis and other mild to moderate pain."); *see also Curler v. Comm'r of Soc. Sec.* --- F. A'ppx ----, 2014 WL 1282521, at *10 (6th Cir. Apr. 1, 2014) (claimant's allegations of disabling back pain undermined by the fact that the "[a]ll three medications [she was prescribed] are used to treat only moderate to moderately severe pain"); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) ("routine and conservative" treatment may undermine allegations of disabling pain); 20 C.F.R. § 416.929(c)(3)(iv)-(v) (in evaluating credibility of allegations of pain, the Commissioner may consider the level of treatment a claimant has received as well as "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms").[5]

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on a consideration of the entire record and is supported by substantial evidence. Accordingly, in light of the applicable deferential standard of review, the Undersigned concludes that the ALJ's credibility determination was not erroneous.

---

[5]Plaintiff also points out that the ALJ incorrectly noted that he had not been prescribed psychotropic medications. Notwithstanding Plaintiff's testimony that he had not recently taken psychotropic medication, the record references a prescription for Trazadone in March 2008. This error, however, does not warrant remand because it does not bear on the credibility of Plaintiff's allegations of pain, Plaintiff does not challenge the ALJ's non-exertional findings, and substantial evidence supports the ALJ's credibility determination with regard to Plaintiff's allegations of pain. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (when an ALJ relies on invalid reasons for discounting credibility, it amounts to harmless error so long as substantial evidence exists supporting the ALJ's conclusions on credibility).

## VII.     CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.     PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 28, 2014 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge